Docket No. 22-14324

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

RICHARD HICKS and JOCELYN HICKS,

*Appellants*,

v.

GREGORY MIDDLETON, JOHN DOE 1, and MARINE TERMINALS
CORPORATION – EAST, d/b/a PORTS AMERICA,

*Appellees.*

---

On appeal from the United States District Court
for the Southern District of Georgia

Civil Action File No. 4:21-cv-00003-RSB-CLR

---

## BRIEF OF APPELLEE MARINE TERMINALS CORPORATION –
## EAST, d/b/a PORTS AMERICA

---

<table>
<tr><td>

Marc H. Bardack
P. Michael Freed
Elissa B. Haynes
FREEMAN MATHIS
& GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(770) 818-0000

</td><td>

Jason Pedigo
Phillip Thompson
ELLIS, PAINTER, RATTERREE
& ADAMS, LLP
P.O. Box 9946
Savanna, Georgia 31412
(912) 233-9700

</td></tr>
</table>

*Attorneys for Appellee Marine Terminals Corporation – East, d/b/a
Ports America*

## CORPORATE DISCLOSURE

Pursuant to 11th Cir. R. 26.1-2(b), counsel for Appellee certifies

that the Certificate of Interest Persons and Corporate Disclosure

Statement included in Appellants' Brief is complete and correct.

## STATEMENT ON ORAL ARGUMENT

This is a respondeat superior case—nothing more. The facts read like a first-year law school torts exam. The only issues presented are: (1) was defendant Gregory Middleton employed by Appellee Marine Terminals Corporation – East, d/b/a Ports America ("Ports America") when he hit Appellant Richard Hicks with his pickup truck, and; (2) if so, was Middleton acting in the course and scope of his employment at the time?

Few tort doctrines are as basic and well-developed as respondeat superior. Consistent with their *modus operandi* throughout their Principal Brief, Appellants' request for oral argument overcomplicates this straightforward case. But as Ports America shows below, the Court can decide this case by applying long-standing Georgia tort law to the undisputed facts. Oral argument is not necessary and is not likely to significantly aid in the Court's decisional process.

# TABLE OF CONTENTS

**Corporate Disclosure** ...................................................................... **i**

**Statement on Oral Argument** ...................................................... **ii**

**Table of Contents** .......................................................................... **iii**

**Table of Citations** .......................................................................... **v**

**Statement of the Issues** ............................................................... **1**

**Statement of the Case** .................................................................. **1**

I.   Course of Proceedings Below ............................................ 2

II.   Statement of the Facts ....................................................... 3

    A.   Overview of labor relations at the Port of Savannah. ........... 3

    B.   Middleton hit Hicks before his employment with Ports America began. ....................................................... 6

III. Standards of Review ......................................................... 9

**Summary of the Argument** ......................................................... **9**

**Argument and Citations of Authority** ................................... **12**

I.   The district court properly applied the summary judgment standard ............................................................. 12

II.   Middleton was not Ports America's employee when he injured Hicks. .................................................................. 14

    A.   Hicks abandoned the issue by failing to address it in the district court or his principal brief on appeal. ...................... 15

    B.   In any event, the undisputed evidence establishes that Middleton's employment had not yet begun because he never reported to the ship "ready to work." ................................... 17

III. Even if Ports America did employ Middleton at the time of the
     incident, he was not acting in the course and scope of his
     employment. ...................................................................................18

    A.   Middleton was commuting to his assigned job when he
     injured Hicks. ...........................................................................19

    B.   The "special circumstances" exception does not apply
     because Middleton was not performing any job-related task
     independent of his commute. .................................................23

    C.   Hicks' arguments that Middleton was in the course and
     scope of his employment because he believed the HYUNDAI
     LOYALTY was docked at berths 7, 8, or 9 are irrelevant....31

**Conclusion**................................................................................**32**

**Certificate of Compliance** ................................................**34**

**Certificate of Service** ........................................................**35**

iv

# TABLE OF CITATIONS

## Cases

*Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330 (11th Cir. 2019) ............................................................................................... 16

*Archer Forestry, LLC v. Dolatowski*, 771 S.E.2d 378 (Ga. Ct. App. 2015) ............................................................................................... 26

*Bell South Telecommunications, Inc. v. Widner*, 495 S.E.2d 52 (Ga. Ct. App. 1997) ............................................... 14

*Braddy v. Collins Plumbing and Constr., Inc.*, 420 S.E.2d 806 (Ga. Ct. App. 1992) ............................................... 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................... 12, 13

*Centurion Indus., Inc. v. Naville-Saeger*, 834 S.E.2d 875 (2019) ..... 18, 31

*Clo White Co. v. Lattimore*, 590 S.E.2d 381 (Ga. Ct. App. 2003) ..... 27, 28

*Cotton v. Prodigies Child Care Mgmt.*, 870 S.E.2d 112 (Ga. Ct. App. 2022) ............................................................................................... 27

*DMAC81 v. Nguyen*, 853 S.E.2d 400 (Ga. Ct. App. 2021) ...................... 26

*Dougherty Equip. Co., Inc. v. Roper*, 757 S.E.2d 885 (Ga. Ct. App. 2014) ............................................................................................... 19

*Farzaneh v. Merit Const. Co.*, 710 S.E.2d 839 (2011) ........................ 18, 25

*Gateway Atlanta Apartments, Inc. v. Harris*, 660 S.E.2d 750 (2008) ... 14, 15

*Haco Drilling Co. v. Burchette*, 364 P.2d 674 (Okla. 1961) .............. 29, 30

*Hunter v. Modern Cont'l Const. Co., Inc.*, 652 S.E.2d 583 (Ga. Ct. App. 2007) ............................................................................................... 27

*Johnson v. Fleet Finance, Inc.*, 4 F.3d 946 (11th Cir. 1993) .................... 13

*Jones v. Aldrich Co., Inc.,* 373 S.E.2d 649, 651 (Ga. Ct. App. 1998) ...... 29

*Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259 (11th Cir. 2023)...................................................................................9

*MCG Health, Inc. v. Nelson*, 606 S.E.2d 5760 (Ga. Ct. App. 2004).......14

*Patterson v. Southeastern Newspapers, Inc.*, 533 S.E.2d 119 (Ga. Ct. App. 2000) .............................................................................29

*Smith as next friend of MS v. Crisp Reg'l Hosp., Inc.*, 985 F.3d 1306 (11th Cir. 2021)......................................................................16

*Stembridge v. Pride Util. Constr. Co., LLC*, 878 S.E.2d 271 (Ga. Ct. App. 2022).............................................................23, 24, 25, 30

*Wood v. B&S Enter., Inc.*, 723 S.E.2d 443 (Ga. Ct. App. 2012).............26

**Statutes**

O.C.G.A. § 51-2-2.......................................................................12

**Rules**

Fed. R. Civ. P. 56(a).................................................................10

## STATEMENT OF THE ISSUES

1)    Whether Ports America employed Middleton at the time he injured Hicks.

2)    If so, whether the well-established rule shielding an employer from liability for its employee's torts while commuting to work bars Hicks' respondeat superior claim based on the undisputed evidence showing that Middleton was still en route to his assigned job when he injured Hicks and was not performing any job-related tasks during his commute.

## STATEMENT OF THE CASE

Gregory Middleton hit Appellant Richard Hicks with his pickup truck at the Port of Savanah on November 7, 2020. Middleton was inexplicably meandering through the Port in his personal vehicle, supposedly en route to work for Ports America. But Ports America never employed Middleton on the day of the accident and was not even aware he was supposedly its employee. Nor did Middleton perform any work for Ports America while commuting, before injuring Hicks, or afterward.

Hicks claims that Middleton was solely at fault for causing his injuries. He sued Ports America on respondeat superior grounds. The

1

district court entered summary judgment for Ports America. Hicks appeals.

## I.    Course of Proceedings Below

Mr. and Mrs. Hicks filed suit against Middleton and Ports America in the State Court of Chatham County, Georgia, on December 7, 2020. (Doc. 1-1.) Hicks alleged that his injuries were "caused entirely through the fault of Gregory Middleton," who was impaired. (*Id.* at ¶¶8-9.) He claimed that Ports America employed Middleton at the time and so is vicariously liable for Middleton's actions. (*Id.* at ¶9.)

Ports America removed the case to the U.S. District Court for the Southern District of Georgia. (Doc. 1.) Ports America moved for summary judgment on Hicks' respondeat superior claim after discovery. (Doc. 60.) The district granted the motion and entered final judgment under Fed. R. Civ. P. 54(b). (Docs. 95, 104.) Mr. and Mrs. Hicks timely filed a notice of appeal.[1] (Doc. 106.)

---

[1] Appellants' Notice of Appeal indicated their intent to appeal two other orders from the district court: (1) the order granting in part and denying in part Ports America's motion to exclude the testimony of Paul Mosely and James Tandy, and (2) the order denying Appellants' motion for leave to file an amended complaint. (Doc. 106, 92, and 82.) Appellants do not challenge those orders in their Principal Brief. To the extent

2

## II.     Statement of the Facts

### A.     Overview of labor relations at the Port of Savannah.

The legal issues presented here require an understanding of the labor relations at the Port of Savanah. Ports America is one of three stevedoring companies that provide stevedoring services at the terminal. (Doc. 82-1, ¶2.) A collective bargaining agreement requires the stevedoring companies to employ longshoreman through the International Longshoremen Association ILA 1414 union ("ILA 1414"). (Doc. 82-1, ¶¶4, 12; Doc. 66 at 31:14-17; Doc. 22-1, ¶10[2].) That same agreement governs the ILA 1414. (Doc. 82-1, ¶¶3-5.)

ILA 1414 members select jobs based on a seniority system. (Doc. 82-1, ¶7; Doc. 66 at 33:1-11; 66:12-19.) The union holds a "shape up" meeting (also called a "check out" meeting) at the off-site union hall one hour before the stevedores are to begin a cargo operation. (Doc. 82-1, ¶6.)

---

Appellants' Notice of Appeal places those orders before this Court, it should affirm based on their omission from the Principal Brief.

[2] Ports America cites to deposition transcripts using the page number generated by the district court's electronic filing system. (11th Cir. R. 28-5.)

Each union member who chooses a job gives their union card to the header, who submits it to the business office. (Doc. 82-1, ¶8.) There, a clerk enters each member's name into a computer system and generates a "gang card" for each vessel showing the ILA members assigned to that vessel and the specific berth at the Port where it is docked. (Doc. 82-1, ¶¶8-9.) The stevedoring companies must accept the longshoremen the union sends—they do not know in advance which union members are scheduled to show up, and the union unilaterally dispatches another member a longshoreman fails to report. (Doc. 82-1, ¶¶13-14.)

Union members choose new jobs each day and therefore work for all three stevedoring companies. A member's employer on any given day depends on which job he selects. As a result, the stevedoring companies do not permanently employ any particular ILA 1414 members like traditional employers. (Doc. 66 at 31:17.) Instead, they receive a different mix of employees each day depending on the union members' selections.  (Doc. 82-1, ¶12.) So an ILA 1414 longshoreman might work for one stevedore company one day, another the next day, and another the day after. (*Id.*) A longshoreman's employment is effectively

4

terminated at the end of each job shift, and his next employer is determined at the next shape-up.

An ILA 1414 member's work for a stevedoring company begins when he reports to a ship "ready to work" and the cargo operation starts (Doc. 82-1, ¶18.) A longshoreman is "ready to work" when he reports to his assigned vessel by the operation's start time with his personal protective equipment ("PPE") on and the "game plan" in hand. (Doc 82-1, ¶19.)

So to become a stevedore employee, a longshoreman must first choose a job and then travel from the union hall to the Port. He need not report immediately nor drive directly there so long as he arrives at the vessel by the start time. (Doc. 82-1, ¶19.) Second, a longshoreman must obtain the "game plan" for his assigned operation after arriving at the Port. (Doc. 82-1, ¶23.) A game plan outlines how cargo will be unloaded and loaded onto a ship. (Doc. 82-1, ¶24.) A longshoreman typically gets the game plan at the dock house closest to the container berth where the assigned vessel is docked. (*Id.*) Lastly, he must don personal protective equipment and attend a ship-side safety meeting. (Doc. 82-1, ¶23.)

Under the collective bargaining agreement, stevedoring companies do not pay the longshoreman for their travel time from the union hall or for getting "ready to work." (Doc. 82-1, ¶25.) They do not enter the longshoreman onto their payroll until the start time of their operation. (Doc. 82-1, ¶21; Doc. 71:56:1-9.). If a longshoreman does not report, the stevedore does not enter him onto the payroll and he does not get paid. (Doc 70 at 16:1-17:1; Doc. 71 at 55:16-56:9.)

## B.    Middleton hit Hicks before his employment with Ports America began.

Middleton elected to work as part of a "two-man gang"[3] aboard the HYUNDAI LOYALTY on the day he hit Hicks. (Doc. 82-1, ¶26; Doc. 66 at 66:12-19; 69:11-16.) Longshoremen on a two-man gang perform their cargo duties onboard the ship. (Doc. 82-1, ¶29.) They perform none of those duties on the dock, nor do any of those duties require using a personal vehicle. (Doc. 82-1, ¶30.)

The HYUNDAI LOYALTY was docked at container berth 4. (Doc. 82-1, ¶27.) The closest dock house to container berth 4 is located at berth 5. (Doc. 82-1, ¶28.)

---

[3] A two-man gang unlocks deck twistlocks and prepares the ship's deck to receive containers. (Doc. 82-1, ¶26.)

Middleton drove his pickup truck from the union hall to the Port, arriving about 23 minutes before the operation's 1:00 p.m. start time. (Doc. 82-1, ¶31.) But he did not go to berth 4, where his assigned ship was docked. (Doc. 82-1, ¶32.) Instead, he drove past berth 4 to the north edge of the terminal where berth 9 is located. (*Id.*) He then turned around and headed south toward berth 8. (*Id.*) The map below shows Middleton's path:[4]



---

[4] The respective container berths are marked as "CB."

7

Middleton hit Hicks with his truck near the berth 8 dock house at about 12:45 p.m., 15 minutes before the start time for his assigned job. (Doc. 82-1, ¶¶33-35.) He did not exit his vehicle between arriving at the Port and the incident. (Doc. 82-1¶44.) No longshoremen were "on the clock" when the incident occurred: the noon hour is a mandatory lunch break for those who began working earlier in the day. (Doc. 82-1, ¶¶17, 22, 34.)

Middleton did not become a Ports America employee or perform any work for Ports America that day. He never reported as "ready for work" or completed any pre-operation tasks; he did not obtain the game plan, don his PPE, or attend the safety meeting. (Doc. 82-1, ¶¶38-40; Doc. 70 at 16:1-11.) He never even went to berth 4, where the HYUNDAI LOYALTY was docked, or the berth 5 dock house, where the game plan was. Instead, he wondered nearly a mile away from berth 4.[5]

---

[5] The length of each terminal is published by the Georgia Ports Authority. Based on that data, Middleton drove approximately one mile past his stopping point to report for work. https://gaports.com/facilities/port-of-savannah/garden-city-terminal/ (last visited July 11, 2023).

Ports America did not employ Middleton or put him on its payroll that day because he never reported to the ship or performed any work. (Doc. 71 at 55:11-18.) Ports America did not know that Middleton was even supposed to work for it because it simply noted a longshoreman failed to show and informed the union hall who sent a replacement. (Doc. 70 at 21:18-22:9; Doc 71 at 54:20-56:9.) Middleton's last employer before the incident was one of the other three stevedoring companies, Ceres Marine Terminals. (Doc. 66 at 62:22-63:17.)

## III.  Standards of Review

This Court reviews a district court's entry of summary judgment de novo. *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023).

## SUMMARY OF THE ARGUMENT

Appellants seek to dramatically expand Georgia respondeat superior law. They urge this Court to establish that a purported employer can be vicariously liable despite undisputed evidence that (1) it had no knowledge that the tortfeasor—who is not its permanent employee—was assigned to its operation, (2) the tortfeasor reported to work, became an employee, or performed any task to further the

defendant's business, and (3) he injured a pedestrian while driving on his way to work. Long-standing Georgia law forbids that result.

Even if Middleton can somehow be considered a Ports America employee, Georgia respondeat superior law distinguishes between an employee serving his employer's business and being en route to doing so. In the latter instance, the employer cannot be vicariously liable for the employee's torts; in the former, it can. This case falls within the latter category.

Middleton struck Hicks while driving his personal vehicle before obtaining the operation's game plan, donning his PPE, attending the safety meeting, or reporting to the HYUNDAI LOYALTY. He was not "on the clock" and performed no on-ship duties for Ports America. Hicks disputes none of these dispositive facts.

The gravamen of Hicks' appeal is that a jury could find that Middleton was in the course and scope of his employment because he was traveling to pick up the game plan before reporting to the ship. His argument suffers two primary flaws.

First, Ports America did not employ Middleton at the time. Respondeat superior applies only when there is an employer-employee

(or master-servant) relationship. Because of the unique relationship between the ILA 1414 longshoreman and the stevedore companies, Middleton's "employment" with Ports America on the day of the incident did not begin until the 1:00 p.m. start time. Middleton never reported to the ship that day, performed any work for Ports America, or received any payment. So Ports America did not employ him went the incident occurred. Hicks no doubt disputes that conclusion. But he failed to address the issue in his Principal Brief (or in the district court). Consequently, he has abandoned the issue and cannot establish this threshold requirement of his claim.

Second, setting aside the fact that Middleton drove past berth 4 and was nowhere near the location of game plan, Hicks' position ignores the distinction between performing work and commuting to work. So even if Middleton were driving to pick up the game plan and report to his assigned vessel, he undisputedly never reached that point or undertook any task for Ports America distinct from his commute. At most, he was on his way—*i.e.*, commuting—to perform his job-related tasks. As a result, Hicks cannot sustain his respondeat superior claim.

11

As a practical matter, commuting to work is rarely purely personal. An employee driving to work is usually on his way to eventually serve his employer. But under Georgia law, merely traveling to one's job *is* purely personal. The employer, thus, cannot be held vicariously liable for the employee's actions during his commute.

For these reasons, and as discussed more fully below, this Court should affirm the district court's judgment.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. The district court properly applied the summary judgment standard.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 mandates summary judgment for a defendant when the plaintiff fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

12

Ports America bore the initial burden of demonstrating the absence of a genuine issue of material fact on Hicks' respondeat superior claim. See *Id.* at 323. When it did, the burden shifted to Hicks to show a genuine dispute of fact for trial. *Id.* at 324. His failure to do so required the district court to enter summary judgment for Ports America. *See Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 948 (11ᵗʰ Cir. 1993).

The parties do not dispute the material facts here. They reach different conclusions about their legal significance, but the facts are largely uncontested. Consistent with that, Hicks does not contend on appeal that the district court erroneously found no genuine dispute of material fact in entering summary judgment. Instead, he claims the court reached the wrong conclusion or made improper inferences based on the undisputed facts.

Hicks has shown no error by the district court. Even if Middleton's employment with Ports America began before the incident, he was still commuting to his assigned job when he injured Hicks, and he was not performing any work for Ports America that was distinct from the commute itself. So his claim against Ports America cannot survive.

13

## II.    Middleton was not Ports America's employee when he injured Hicks.

Respondeat superior liability demands an employer-employee relationship. *See Bell South Telecommunications, Inc. v. Widner*, 495 S.E.2d 52, 55-56 (Ga. Ct. App. 1997) (physical precedent only) (reversing denial of summary judgment on the plaintiff's respondeat superior claim because there was no employer-employee relationship between him and the appellant)[6]; O.C.G.A. § 51-2-2 ("Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business . . ."); *see also MCG Health, Inc. v. Nelson*, 606 S.E.2d 576, 580 (Ga. Ct. App. 2004) ("The term 'employment' has been defined as the existence of the relationship of master and servant.") (internal quotations omitted). Control is the hallmark characteristic of an employer-employee relationship. *Gateway Atlanta Apartments, Inc. v. Harris*, 660 S.E.2d 750, 755 (2008). It hinges on the purported employer's "right to control the time, manner, means, and method of executing the work, and whether the master has the right to discharge the servant." *Id.* Respondeat superior liability

---

[6] Ports America agrees with Appellants that Georgia law applies to the respondeat superior issue presented here.

does not attach without an employment relationship predicated on control. *Id.*; *Widner*, 495 S.E.2d at 55-56.

### A. Hicks abandoned the issue by failing to address it in the district court or his principal brief on appeal.

Ports America presented evidence and argument on summary judgment that Middleton was not its employee when he injured Hicks. (Doc. 60-1 at 9-10.) Middleton's employment for the day had not yet begun because he never reported "ready for work." Hicks then needed to rebut that evidence to survive summary judgment. *See Widner*, 495 S.E.2d at 55 (recognizing that a purported employer's denial of an employment relationship will sustain a motion for summary judgment on a respondeat superior claim unless the plaintiff "set[s] forth specific facts revealing a genuine issue for trial."). He did not. Nor did he counter Ports America's argument that Middleton was not its employee then. (Doc. 82 at 4-16.) Instead, he presumed an employment relationship and argued exclusively that Middleton acted in the course and scope of that employment. (Id. at 7-16.) The district court could have entered summary judgment on this basis alone.[7]

_____

[7] The district court acknowledged Port's America's argument but declined to rule on the issue. (Doc. 95 at 7-8) ("However, the Court need

Hicks repeats that omission on appeal. Again, his argument jumps straight to the "course and scope" issue without first establishing the requisite employment relationship between Middleton and Ports America. (Appellant's Br. at 1) (providing Appellant's Statement of the Issues that excludes whether Ports America employed Middleton at the time of the incident); (*Id.* at 2) ("The issues on appeal involve whether Middleton was acting within the scope of his employment with Ports America.") As a result, he has abandoned the issue. *See Smith as next friend of MS v. Crisp Reg'l Hosp., Inc.*, 985 F.3d 1306, 1309 (11th Cir. 2021). This Court may affirm the district court's judgment without going further.

---

not decide that issue because, even assuming Defendant Middleton was Ports America's employee, and viewing the evidence in the light most favorable to Plaintiffs, the Court finds no facts in the record that would support a reasonable determination that Defendant Middleton was acting in the scope of his employment at the time of the accident.") This Court "may affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019).

**B.    In any event, the undisputed evidence establishes that Middleton's employment had not yet begun because he never reported to the ship "ready to work."**

Ports America did not employ Middleton in the traditional sense. As an ILA 1414 member, Middleton worked for each stevedoring company on a day-by-day, job-by-job basis. (Doc. 82-1, ¶¶4, 12.) He might work for one on Monday, another on Tuesday, and yet another on Wednesday. (*Id.* at ¶12.) As an illustration, Middleton was last employed by Ceres Marine Terminals before the incident. (Doc. 66 at 62:22-63:17.)

Ports America did not select Middleton for the two-man gang on the day of the incident. (Doc. 66 at 66:12-19; 69:11-16.) It did not know he was scheduled to work the ship, nor did it pay him for his time between the shape-up meeting and the 1:00 p.m. start time for the operation. (Doc. 82-1, ¶25; Doc. 71 at 55:11-18.) Rather, Ports America would have paid him an hourly rate beginning at the start time. But because Middleton never reported to the ship, Ports America never placed him on its payroll for that day. (Doc. 71 at 55:11-18.)

Furthermore, Ports America did not control Middleton between when the union assigned him to the two-man gang and the start time.

17

He was merely required to report to the ship "ready to work" by 1:00 p.m. He failed to do so.

For these reasons, Ports America did not begin to employ Middleton before the accident. Hicks' failure to establish this threshold element dooms his claim.

## III. Even if Ports America did employ Middleton at the time of the incident, he was not acting in the course and scope of his employment.

The undisputed facts show that Middleton was en route to work when he hit Hicks. He made no stops after leaving the union hall and had performed no work for Ports America. He was simply on his way to doing so. On this record, the district court correctly entered summary judgment. *See Farzaneh v. Merit Const. Co.*, 710 S.E.2d 839, 842–43 (2011) ("[I]n some cases is so plain and undisputable that the court may resolve a respondeat superior claim as a matter of law."); *Centurion Indus., Inc. v. Naville-Saeger*, 834 S.E.2d 875, 878 (2019) ("[S]ummary judgment for the master is appropriate when the evidence shows that the servant was not engaged in furtherance of his master's business but was on a private enterprise of his own.").

### A.    Middleton was commuting to his assigned job when he injured Hicks.

Georgia law shields employers from liability for the torts their employees commit while commuting to and from work. *Dougherty Equip. Co., Inc. v. Roper*, 757 S.E.2d 885, 888 (Ga. Ct. App. 2014) ("It is well established that an employee on the way to work is not in the course of his employment but rather is engaged in a personal activity."). The district court correctly applied this rule to bar Hicks' respondeat superior claim.

The undisputed facts show that Middleton was still commuting to his assigned job when the accident occurred. He never reported to the "job site" ILA 1414 assigned him to—the HYUNDAI LOYALTY docked at container berth 4. Instead, he drove his vehicle from the union hall to the Port and went to berth 9 before reversing course and hitting Hicks near berth 8. He never exited his vehicle during that trip. Accordingly, Middleton never obtained the operation's game plan, attended the safety meeting, or reported "ready to work." At most, he was merely traveling to do those things.

Traveling to perform job-related tasks is the essence of commuting to work for respondeat superior purposes. Try as Hicks might to twist

Middleton's actions into something else, he cannot under the undisputed factual record.

Hicks concedes the coming-and-going rule but argues that it does not apply because he was no longer commuting when Middleton injured him. He contends that a jury could find that Middleton's commute ended when we entered the Port. (Appellants' Br. at 15-21.) He builds that argument on critiques of the district court's reasons for holding that Middleton was still commuting when the incident occurred and was not in the course and scope of his employment. (*Id.*) He misses the mark on each.

First, he misinterprets the court's holding as based solely on the fact that Middleton was still driving. (*Id.* at 15-16.) According to Hicks, the district court equated driving with commuting. (*Id.*) But his argument rests on a single quote from the court's order pulled out of context. (*Id.* at 15.) The totality of the district court's reasoning reveals its well-founded conclusion that Middleton was still commuting, not just driving. The court found that "the undisputed evidence establishes that Defendant Middleton was commuting to work when the accident occurred." (Doc. 95 at 9) (emphasis added.)

20

Second, Hicks contends that a jury could find that Ports America controlled Middleton's driving once he entered the Port. (Appellants' Br. at 16.) He reasons that Middleton was not free to choose his mode of transportation and could only be inside the Port with Ports America's approval. (*Id.*) But Ports America does not control the Port; the Georgia Ports Authority ("GPA") does. (Doc. 71 at 45:14-15.) The GPA sets the rules and regulations governing who can enter and how. The evidence Hicks points to shows that to be true. (*Id.* at 16) (citing deposition testimony stating that "*Georgia Ports Authority* don't allow the individuals to walk on their port premises") (emphasis added.) (Doc. 67 at 114:18-23; 115:6-13.) GPA's control over the Port is unrelated to whether Middleton was in the course and scope of his employment with Ports America when he injured Hicks.

Hicks similarly contends that Middleton was under Ports America's control because he needed to be dispatched from the union hall and employed by a stevedore to enter the Port. (Appellants' Br. at 16-19.) But he fails to show that Ports America imposed those entry restrictions.

21

Other evidence reveals Ports America's lack of control over Middleton, even after he entered the Port. Ports America only required that Middleton report to the ship ready work by 1:00 p.m. It did not mandate when he needed to arrive at the Port or what he did afterward, so long as he was ready to work by the start time. Ports America did not require him to go directly to the ship nor prevent him from driving elsewhere on the Port (as he did). Middleton was free to turn around and leave the Port if he chose. Ports America's control over Middleton did not begin until the operation's start time. Before then, he could do whatever he wanted so long he reported on time and was ready to work.

Third, Hicks emphasizes that a jury could find that Middleton was serving Ports America's business at the time because he was on his way to pick up the game plan. (*Id.* at 16-18.) As a result, he urges, Middleton had reported for his pre-operations duties even if he did not report for his on-ship duties. (*Id.* at 18-19.) Even if Hicks is correct that obtaining the game plan serves Ports America's business, Middleton never did so. He had driven past the location of his assigned ship and the location of the game plan and was at the far end of the terminal when the incident occurred. So the strongest inference that can be made in Hicks' favor is

22

that Middleton was still on his way to picking up the plans and reporting to the ship. In other words, he was still commuting.

Middleton was not serving Ports America while driving around the Port any more than he was while driving there from the union hall. He was doing the same thing during both trip segments—at most, he was traveling on his way to work. Georgia law mandates that, in doing so, he was merely fulfilling his duty to arrive at work on time. *See Dougherty Equip. Co.*, 757 S.E.2d at 889.

## B.    The "special circumstances" exception does not apply because Middleton was not performing any job-related task independent of his commute.

Georgia law does not support the application of the "special circumstances" exception under these undisputed facts.[8] The exception allows respondeat superior liability to attach to an employee's torts en route to or from work if he performs a work-related task *while in transit. See Stembridge v. Pride Util. Constr. Co., LLC*, 878 S.E.2d 271, 275 (Ga. Ct. App. 2022) (rejecting the application of the special circumstances exception because the employee "was not engaged in any

---

[8] The district court rejected Hicks' invocation of the "special mission" exception. (Doc. 95 at 11-12.) He does not challenge that holding on appeal. (Appellants' Br. at 22, n.10.)

23

activity to benefit his employer during his commute."). In other words, it applies when the employee is doing something in the course and scope of his employment that is distinct from the commute itself. *See id.* (recognizing that application of the special circumstances exception typically requires "something more—some affirmative act by the employee to benefit the employer in order to place the commute in the scope of employment.").

Georgia courts have examined several factors when determining whether the special circumstances exception applies: "the presence of the employer's materials in the employee's vehicle; use of a vehicle stipend; and whether the employee carried a phone for work-related calls during the commute." *Id.* Hicks does not contend that any of these factors are met here. Instead, he accuses the district court of treating the factors as requirements. (Appellants' Br. at 22.) Nothing in the district court's order supports Hicks' complaint. The court merely applied the factors the law prescribes—that is different from converting factors into requirements.

In any event, the district court correctly held that the exception does not apply here. Georgia appellate courts' treatment of the

24

exception illustrates the distinction between commuting without more and performing a job-related task while commuting. For example, the employee in *Farzaneh* injured a pedestrian while driving his personal vehicle to an assigned job site. 710 S.E.2d at 842. He had an employer-issued mobile phone and tool in the vehicle. *Id.* Despite several of the special circumstances factors being satisfied, the court held that the exception did not apply. *Id.* at 843.

Similarly, the court in *Stembridge* declined to apply the exception. The employee there caused an accident on his way to a job site. *Stembridge* at 272-73. He was driving his personal vehicle carrying a mix of his own and his employer's tools. *Id.* at 273. The employer paid the employee a "rig rate" for using his personal tools, and it paid for gas and maintenance on the vehicle. *Id.* The employer paid the employee by the hour beginning when he arrived at the job site. *Id.* In rejecting the special circumstances exception, the court reasoned, "it is undisputed that [the employee] was not engaged in any activity to benefit his employer during his commute; he was not conducting any business or work-related calls during the drive; and he did not make any work-related stops." *Id.* at 275; *see also Wood v. B&S Enter., Inc.*, 723 S.E.2d

443, 447 (Ga. Ct. App. 2012) (affirming trial court's refusal to charge the jury on the special circumstances exception where the employer had purchased a mobile phone for the employee's use but no evidence that he was using the phone at the time he fatally injured a motorcyclist while commuting to the employer's workshop); *DMAC81 v. Nguyen*, 853 S.E.2d 400, 404 (Ga. Ct. App. 2021) (holding that no special circumstances existed where employee was making his usual commute to work, was not using a cell phone or conducting any business for his employer, and was not being paid for his commute time); *Braddy v. Collins Plumbing and Constr., Inc.*, 420 S.E.2d 806, 809 (Ga. Ct. App. 1992) (rejecting the special circumstances exception where employee had a two-way radio in his employer-owned vehicle used for communicating with his employer, but there was no evidence he was using it at the time of the collision); *Archer Forestry, LLC v. Dolatowski*, 771 S.E.2d 378, 381 (Ga. Ct. App. 2015) (holding that special circumstances exception did not apply when employee driving home from work was not using his mobile phone at the time of the collision, even though he had used it 25 minutes earlier for work purposes).

26

By contrast, evidence that an employee performed a specific work-related task while commuting can overcome summary judgment. For example, the plaintiff in *Clo White Co. v. Lattimore* presented evidence that the employee may have been speaking with his employer on a cell phone while driving to work when we injured her. 590 S.E.2d 381, 382 (Ga. Ct. App. 2003). On that evidence, the court held that a jury could find that the special circumstances exception applied. *Id.* at 838. The court reasoned that "the employee may have actually been *conducting some manner of company business at the same time that he was on the way to work when the accident occurred.*" *Id.* (emphasis added); *see also Hunter v. Modern Cont'l Const. Co., Inc.*, 652 S.E.2d 583, 584 (Ga. Ct. App. 2007) (applying the special circumstances exemption and reversing summary judgment based on evidence that, at the time of the accident, the employee may have been on a work-related telephone call or distracted by such a call that she did not answer).

Similarly, the employee in *Cotton v. Prodigies Child Care Mgmt.* was returning to work from her lunch break and caused a collision while scrolling through the contacts in her phone to notify her manager that she was arriving late. 870 S.E.2d 112, 114 (Ga. Ct. App. 2022).

27

Relying on *Clo White* and *Hunter*, the court held that evidence was sufficient to defeat summary judgment under the special circumstances exception. *Id.* at 380-81. The court distinguished *Farzaneh*, *Wood*, *Braddy*, and *Archer Forestry* because the employees in those cases were not using their cell phones when they injured the plaintiffs. *Id.* at 381.

To be clear, Georgia law does not specifically require an employee to use a cell phone or similar device to further his employee's business to find a "special circumstance." It just so happens that the cases in which Georgia courts have applied the exception dealt with that factual scenario. What matters here is the broader principle collectively established by all the cases cited above: the special circumstances exception does not apply unless the employee is fulfilling some job-related task while commuting that is distinct from the commute itself (e.g., talking on the phone for work purposes).

Hicks cannot point to any work-related task he was performing while commuting. At most, he was driving on his way to complete such tasks. Under the cases above, the exception cannot apply.

28

Searching for authority to support the application of exception

here, Hicks points to decades-old cases from other jurisdictions.[9]

(Appellants' Br. at 22, 24-25.); He relies most heavily on *Haco Drilling*

*Co. v. Burchette*, a 1961 case from Oklahoma. (*Id.* at 24-25); 364 P.2d

674 (Okla. 1961). The defendant-employer there required its employee

to stop on his way to a job site to pick up ice water for the other

workers. *Id.* at 676. The employer supplied the container and the ice. *Id.*

The employee caused a collision that injured the plaintiff *after* making

the required stop en route to the job site. *Id.* Applying Oklahoma law,

the court found that the employee was carrying out his employer's

---

[9] Hicks also quotes *Jones v. Aldrich Co., Inc.*, for the proposition that the special circumstances exception applies "where the employee is on their way to work and performs 'the discharge of some duty incidental to the nature of their employment in the interest of, or under the direction of, their employer, and an injury arises in route.'" (Appellants' Br. at 21) (quoting *Jones*, 373 S.E.2d 649, 651 (Ga. Ct. App. 1998)) (Appellants' alterations omitted). The *Jones'* quote, however, comes from the court's discussion of the "special mission" exception. *Id.* at 650-51. *Jones* did not discuss the special circumstances exception. The same applies to Hicks' citation to *Patterson v. Southeastern Newspapers, Inc.*, 533 S.E.2d 119 (Ga. Ct. App. 2000). That case also dealt with the special mission exception, not the special circumstances exception. And again, Hicks has not raised the special mission exception on appeal. This Court, therefore, should disregard Hicks' misplaced reliance on *Jones* and *Patterson*.

29

instructions, and so was in the course and scope of his employment. *Id.* at 677.

In addition to being nonbinding, *Haco Drilling* is materially distinguishable. There, the employee was not merely on his way to carrying out his job requirements; he had stopped to do so per his employer's instructions. Here, by contrast, Middleton had conducted no task that was even arguably to advance Ports America's business—he was still traveling on his way to do so. Hicks' reliance on this 62-year-old nonbinding decision is misplaced.

Adopting Hicks' position would eviscerate the general rule that an employee commuting to work is not in the course and scope of his employment. Every employee driving to work is en route to serving his employer's business. In that way, one could argue that the employee is doing something incidental to his employment—that, in essence, is Hicks' position here. But Georgia law holds that the commute itself is purely personal and not enough to impose liability on his employer vicariously. "To conclude otherwise would effectively subject an employer to liability for every commute, and the exception would swallow the rule." *Stembridge*, 878 S.E.2d at 275.

**C.    Hicks' arguments that Middleton was in the course and scope of his employment because he believed the HYUNDAI LOYALTY was docked at berths 7, 8, or 9 are irrelevant.**

Hicks highlights Middleton's purported, but incorrect, belief that the HYUNDAI LOYALTY was located and container berths 7, 8, or 9 instead of berth 4. (Appellants' Br. 25-29.) He reasons that Middleton's belief justified his detour and created a fact issue preventing summary judgment. (*Id.*)

Middleton's belief about where he was supposed to report is irrelevant. Whether the ship was docked at berth 4 or elsewhere and the actual location of the game plan makes no difference—Middleton never arrived at any of those places, exited his truck, obtained the game plan, or performed any other job-related task.

Finally, Hicks contends that summary judgment was improper because the evidence does not show a purely personal reason for Middleton's jaunt to berth 8. (*Id.* at 29.) His argument ignores Georgia law—because Middleton was still commuting without performing any separate job-related task, he was acting for personal purposes as a matter of law. *See Centurion Indus., Inc.*, 834 S.E.2d at 878–79 ("There

is a longstanding general rule that an employee is engaged in a purely personal matter while commuting to or from work.").

## CONCLUSION

For these reasons, Ports America asks this Court to affirm the district court's entry of summary judgment.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ P. Michael Freed*
Marc H. Bardack
Georgia Bar No. 037126
mbardack@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com
Elissa B. Haynes
Georgia Bar No. 804466
elissa.haynes@fmglaw.com

*Attorneys for Appellee*

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(833) 330-3669 (facsimile)

**ELLIS, PAINTER, RATTEREE & ADAMS, LLP**

Jason Pedigo
Georgia Bar No. 140989
pedigo@epra-law.com
Philip M. Thompson
Georgia Bar No. 963572
pthompson@epra-law.com

*Attorneys for Appellant*

P.O. Box 9946
Savannah, Georgia 31412
(912) 233-9700 (telephone)
(912) 233-2281 (facsimile)

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,192 words. This word count was derived in reliance on the word count of the word-processing system (Microsoft Word) used to prepare this document.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: July 14, 2023.

_/s/P. Michael Freed_
P. Michael Freed
Georgia Bar No. 061128

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the within and

foregoing **BRIEF OF APPELLEE** with the Clerk of Court using the

CM/ECF system, which will generate notice and serve this document on

the following counsel of record:

> Naveen Ramachandrappa
> Bondurant, Mixon & Elmore, LLP
> 1201 W. Peachtree Street
> Ste. 3900
> Atlanta, Georgia 30309
> 404-881-4100
> ramachandrappa@bmelaw.com
>
> Brent J. Savage, Sr.
> Zachary R. Sprouse
> James H. Wilson, III
> Savage Turner Pinckney Savage & Sprouse
> P.O. Box 10600
> Savannah, Georgia 31412
> 912-231-1140
> bsavage@savagelawfirm.net
> zsprouse@savagelawfirm.net
> jwilson@savagelawfirm.net

> /s/ P. Michael Freed
> P. Michael Freed
> Georgia Bar No. 061128